UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GOLDEN GOOSE DELUXE BRAND d/b/a
GOLDEN GOOSE SPA,                                          :

                                                          :      19 Civ. 2521 (VSB) (GWG)

                        Plaintiff,
                                                          :      <u>REPORT AND</u>
        -v.-                                                     <u>RECOMMENDATION</u>
                                                          :
AADCT OFFICIAL STORE, et al.,
                                                          :

                        Defendants.                       :
---------------------------------------------------------------X
---------------------------------------------------------------X
GOLDEN GOOSE DELUXE BRAND d/b/a
GOLDEN GOOSE SPA,                                          :

                                                          :      19 Civ. 2524 (VSB) (GWG)

                        Plaintiff,
                                                          :      <u>REPORT AND</u>
        -v.-                                                     <u>RECOMMENDATION</u>
                                                          :
ACEBRANDSHOES, et al.,
                                                          :

                        Defendants.                       :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Plaintiff Golden Goose Deluxe Brand ("GG") brought these two actions against various

entities that GG alleges are infringing on GG's trademarks through sales of counterfeit goods on

the internet.   219 defendants have defaulted and now GG seeks a judgment against them for

statutory damages and other relief.[1]   For the following reasons, GG should be awarded a

---

        [1]   <u>See</u> Motion for Summary Judgment, filed June 17, 2019 (Docket # 31); Proposed
Findings of Fact and Conclusions of Law, filed Dec. 13, 2019 (Docket # 64) ("PFF"); Affidavit
of Brieanne Scully in Support of Proposed Findings of Fact and Conclusions of Law, filed Dec.
13, 2019 (Docket # 65) ("Scully Aff."); Memorandum of Law in Support of Proposed Findings
of Fact and Conclusions of Law, filed Dec. 13, 2019 (Docket # 66) ("Supp. Mem.").

judgment of $75,000 against each entity plus post-judgment interest along with a post-judgment asset restraining order and an order authorizing the release and transfer of defendants' frozen assets to satisfy the award.

I.    BACKGROUND

On March 21, 2019, GG filed two complaints alleging trademark counterfeiting; infringement of registered trademarks; false designation of origin, pass off, and unfair competition; infringement of unregistered trademarks; unfair competition; and unjust enrichment.   See Complaint, filed April 5, 2019 (Docket # 7) ("Compl.") (19cv2521); Complaint, filed April 5, 2019 (Docket # 9) (19cv2524).   With the exception of defendant-specific information, the filings in both cases are identical.   Unless otherwise noted, references and citations herein refer to the documents filed in Golden Goose Deluxe Brand d/b/a Golden Goose Spa v. Aadct Official Store, et al., No. 19-2521 (S.D.N.Y. filed March 21, 2019).

On the day it filed the complaint, GG also requested "1) a temporary restraining order; 2) an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery," which was approved on March 22, 2019.   Certificate of Service of Summons and Complaint, filed April 11, 2020 (Docket # 20) ("Serv. Cert.") ¶¶ 4-5; see also Temporary Restraining Order and Accompanying Orders, filed on April 5, 2019 (Docket # 17).

On April 3 and 4, 2019, GG served defendants according to the methods permitted by the

---

Substantively identical documents were filed in 19cv2524.   See Motion for Summary Judgment, filed June 17, 2019 (Docket # 29); Proposed Findings of Fact and Conclusions of Law, filed Dec. 13, 2019 (Docket # 52); Affidavit of Brieanne Scully in Support of Proposed Findings of Fact and Conclusions of Law, filed Dec. 13, 2019 (Docket # 53); Memorandum of Law in Support of Proposed Findings of Fact and Conclusions of Law, filed Dec. 13, 2019 (Docket # 54).

Court.   Serv. Cert. ¶¶ 6-7.   The defendants never answered, and the temporary restraining order was converted into a preliminary injunction on April 16, 2019.   See Preliminary Injunction Order, filed Apr. 16, 2019 (Docket # 24) ("PIO"); Order, filed Apr. 16, 2019 (Docket # 25).   GG filed a motion for summary judgment on June 17, 2019.   See Motion for Summary Judgment, filed June 17, 2019 (Docket # 31).   The undersigned then held a conference on October 23, 2019, at which GG agreed to withdraw the summary judgment motion and instead seek a default judgment.   See Order, filed Oct. 23, 2019 (Docket # 51).   The Clerk subsequently issued Certificates of Default.   See Clerk's Certificate of Default, filed Oct. 28, 2019 (Docket # 54); Clerk's Certificate of Default, filed Dec. 13, 2019 (Docket # 63).   The Court deemed the motion for summary judgment to constitute a motion for default judgment.   Memo Endorsement, filed Oct. 28, 2019 (Docket # 56).   The case was referred to the undersigned for an inquest.   See Amended Order Referring Case to Magistrate Judge, filed Oct. 29, 2019 (Docket # 57).

II.   FACTS RELATING TO LIABILITY AND DAMAGES

In light of defendants' default, GG's properly pleaded allegations in the complaint, except those related to damages, are accepted as true.   See, e.g., City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor.") (citation omitted).   "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."   Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted).   This inquiry

3

requires the District Court to: (1) "determin[e] the proper rule for calculating damages on . . . a claim" and (2) "assess[] plaintiff's evidence supporting damages to be determined under this rule."   Id.

Federal Rule of Civil Procedure 55(b)(2) "allows but does not require the district judge to conduct a hearing" on the damages amount.   Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 189 (2d Cir. 2015) ("[T]he court may conduct such hearings or order such references as it deems necessary and proper") (internal quotation marks and citation omitted).   In this case, the Court finds that a hearing is unnecessary inasmuch as GG's submissions have not been contested and they provide all the information needed to determine GG's damages.

A.    Facts Relating to Liability

GG is a high-end Italian fashion and accessories brand whose products are distributed in over 700 exclusive, multi-brand stores and franchises; seven flagships stores in the United States; and other flagship stores in cities such as Paris, London, Tokyo, St. Tropez, and Amsterdam. Compl. ¶¶ 160 (first), 163 (first).[2]   Stores that sell GG products include Barneys, Selfridges, and Bergdorf Goodman.   Id. ¶ 163 (first).   GG products "are marketed under the Golden Goose Marks," which include several registered trademarks.   Id. ¶ 161 (first); see also id. at *73-90 ("Exhibit B" includes registered trademarks and related documents).[3]   GG sneakers have been listed as "one of the most popular sneakers of 2018."   Id. ¶ 164 (first) (internal quotation marks

_____

[2]   After paragraph 171, the paragraph numbering of the complaint resets to 99 and the numbering continues sequentially.   See Compl. at 31.   Accordingly, there are duplicates of several paragraph numbers.   We differentiate the duplicated paragraphs with a parenthetical stating either "first" or "second."

[3]   "*__" indicates a page number assigned by the Court's ECF system.

and footnote omitted).   GG products retail for $250 to $2,400.   Id. ¶ 165 (first).   GG and its

marks "have acquired a valuable reputation and goodwill among the public" and GG "has gone

through great lengths to protect its interest in and to the [GG] Products and [GG] Marks."   Id.

¶¶ 170-71 (first).

      Defendants conduct business in the United States through their accounts and storefronts

on Alibaba and AliExpress, which are online marketplace and e-commerce platforms that allow

merchants to sell and ship products directly to consumers worldwide.   Id. ¶ 99 (second).

Defendants' businesses all sell counterfeit GG products.   See id. ¶ 103 (second).   These

products are shipped to consumers in the United States, including New York.   Id.

      GG retained an entity called New Alchemy Limited ("NAL") to investigate trademark

infringement.   Id. ¶ 107 (second).   Based on NAL's efforts, GG learned that defendants have

engaged in

> [M]anufacturing, importing, exporting, advertising, marketing, promoting,
> distributing, displaying, offering for sale and/or selling products bearing or used
> in connection with the Golden Goose Marks, and/or products in packaging and/or
> containing labels bearing the Golden Goose Marks, and/or bearing or used in
> connection with marks that are confusingly similar to the Golden Goose Marks
> and/or products that are identical or confusingly similar to the Golden Goose
> Products to U.S. consumers.

Id.   Defendants are not authorized by GG to copy, sell, advertise, or otherwise disseminate the

GG marks.   See id. ¶ 108 (second).   Defendants' counterfeit products are "nearly

indistinguishable" from GG products.   Id. ¶ 109 (second).   NAL confirmed that, as of the date

the complaints were filed, defendants were still selling counterfeit products and provided

shipping or had shipped to the United States, including New York.   Id. ¶ 110 (second); see also

id. ¶¶ 111-16 (second).

      In selling counterfeit products, defendants violated GG's rights in the GG marks.   Id.

¶ 117 (second).   Their conduct occurred after GG's adoption and use of the marks and after GG obtained registrations and the marks became well-known.   Id.   "Defendants had knowledge of [GG's] ownership of the [GG] Marks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the [GG] Products, and in bad faith adopted the [GG] Marks."   Id. ¶ 118 (second).   "Defendants have been engaging in the illegal counterfeiting and infringing actions . . . knowingly and intentionally, or with reckless disregard or willful blindness to [GG's] rights, or in bad faith, for the purpose of trading on the goodwill and reputation of the [GG] Marks and [GG] Products."   Id. ¶ 119 (second).   As a result of defendants' sales of counterfeit GG products, defendants have caused confusion and mistake, deceived costumers, and have damaged GG by associating their products with GG products.   See id. ¶ 120 (second). Defendants' bad faith has and will continue to cause irreparable harm to GG if not enjoined. See id. ¶¶ 121-22 (second).

   B.   Damages Sought

   GG seeks $75,000 in statutory damages against each defaulting defendant under the Lanham Act, 15 U.S.C. § 1117, plus post-judgment interest; a post-judgment asset restraining order; and an order authorizing the release and transfer of defendants' frozen assets to satisfy the award.   See PFF ¶ 37; Scully Aff. ¶ 16; see also Supp. Mem. at 1.

III.   DISCUSSION

   A.   Statutory Damages under the Lanham Act

   Under the Lanham Act, trademark owners may elect to receive statutory damages, instead of actual damages, from infringers.   See 15 U.S.C § 1117(c).   The Lanham Act provides:

> In a case involving the use of a counterfeit mark . . . in connection with the sale,
> offering for sale, or distribution of goods or services, the plaintiff may elect, at
> any time before final judgment is rendered by the trial court, to recover, instead of
> actual damages and profits under subsection (a), an award of statutory damages
> for any such use in connection with the sale, or distribution of goods or services in

the amount of — (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).   Thus, the statute permits an award of between $1,000 and $200,000 per counterfeit mark.   An award of up to $2,000,000 is permitted if the violation is willful, and "[t]rademark infringement is deemed willful by virtue of a defendant's default."   Rovio Entm't v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) (citing Keystone Global LLC v. Auto Essentials, Inc., 2015 WL 224359, at *6 (S.D.N.Y. Jan. 16, 2015)) (collecting cases).

Section 1117(c) was enacted to address the difficulty of calculating actual damages caused by counterfeiters.   See, e.g., Pitbull Prods., Inc. v. Universal Netmedia, Inc., 2007 WL 3287368, at *3 (S.D.N.Y. Nov. 7, 2007); Rodgers v. Anderson, 2005 WL 950021, at *2 (S.D.N.Y. Apr. 26, 2005) ("The rationale for this section is the practical inability to determine profits or sales made by counterfeiters.") (collecting cases); Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) ("Congress added the statutory damages provision of the Lanham Act in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . . , making proving actual damages in these cases extremely difficult if not impossible.'") (quoting S. Rep. No. 104-177, at 10 (1995)), amended in part, 328 F. Supp. 2d 439 (S.D.N.Y. 2004); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (same).

Section 1117(c), however, "does not provide guidelines for courts to use in determining an appropriate award . . . as it is only limited by what the court considers just."   Gucci Am., 315 F. Supp. 2d at 520 (internal quotation marks and citation omitted).   Many courts have looked to

the analogous provision in the Copyright Act for guidance, 17 U.S.C. § 504(c), and have

considered the following factors in setting statutory damage awards under the Lanham Act:

> (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the
> plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others
> besides the defendant;" (5) "whether the defendant's conduct was innocent or
> willful;" (6) "whether a defendant has cooperated in providing particular records
> from which to assess the value of the infringing material produced;" and (7) "the
> potential for discouraging the defendant."

Philip Morris USA Inc. v. A & V Minimarket, Inc., 592 F. Supp. 2d 669, 673 (S.D.N.Y. 2009)

(citations omitted); accord Sream, Inc. v. W. Vill. Grocery Inc., 2018 WL 4735706, at *3

(S.D.N.Y. Oct. 1, 2018); Cengage Learning, Inc. v. Bhargava, 2017 WL 9802833, at *4

(S.D.N.Y. Aug. 22, 2017), adopted by 2018 WL 1989574 (S.D.N.Y. Apr. 25, 2018).   We agree

that those factors should be considered.

    With respect to the first two factors, we cannot determine from the record the extent of

the expenses saved and profits reaped by defendants or the revenues lost by GG.   However,

"defendants have declined to participate in this lawsuit, and have thus deprived [GG] of the

opportunity to make a meaningful assessment of the extent of their business, including volume of

sales and profits earned." Polo Ralph Lauren, L.P. v. 3M Trading Co. Inc., 1999 WL 33740332,

at *6 (S.D.N.Y. Apr. 19, 1999).   GG obtained only limited discovery from third-parties.   See

PFF ¶ 57; Scully Aff. ¶ 15.   Due to their use of websites, the defendants have the "ability to

reach a vast customer base through internet advertising," Burberry Ltd. v. Designers Imps., Inc.,

2010 WL 199906, at *10 (S.D.N.Y. Jan. 19, 2010), and thus we presume that their sales were

voluminous and deprived GG of the ability to make at least some of those sales.   See Rolex

Watch U.S.A., Inc. v. Jones., 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (noting the

"virtually limitless number of customers available" through website sales).

As for the third factor, GG has not supplied any evidence of the monetary value of its trademarks.   Nonetheless, GG "is a leading Italian high-end luxury men's and women's fashion and accessories brand that launched in or about 2000, which has distinguished itself with innovative but artisan spirited products, a low-key communication strategy and a highly selective placement in venues that share the brand's philosophy."   Declaration of Sandro Baggiani and Accompanying Exhibits, filed Apr. 5, 2019 (Docket # 15) ("Baggiani Decl.") ¶ 3.   GG products are "distributed through a network of more than 700 exclusive multi-brand stores and franchisees, along with 7 directly operated flagship stores in the United States and many others abroad" and "at luxury retailers such as Barneys, Selfridges and Bergdorf Goodman."   Id. ¶¶ 3-4.   Further, GG products have been featured in prominent publications such as The Wall Street Journal, the Cut, and GQ, among others.   Id. ¶ 5.   Thus, we can "'infer from the well-known reputations of most or all of the trademarks and the sea of advertising that presses them on the consciousness of the buying public that they are indeed valuable.'"   Lane Crawford LLC v. Kelex Trading (CA) Inc., 2013 WL 6481354, at *4 (S.D.N.Y. Dec. 3, 2013) (quoting Polo Ralph Lauren, 1999 WL 33740332, at *6) (additional citation omitted), adopted by 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014).

Factors four and seven, which relate to deterring the conduct of defendants and others, weigh in GG's favor.   "The need to deter other counterfeiters is particularly compelling given the apparent extent of counterfeit activity," Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., 2016 WL 658310, at *5 (S.D.N.Y. Feb. 17, 2016), adopted by 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016), as evidenced by the allegations in the complaint against the 219 defendants who defaulted.   A substantial award is necessary to discourage defendants from

9

continuing to engage in their illicit conduct.   In addition, defendants' willful misconduct and failure to appear in this litigation merit a finding that "a slight damage award is unlikely to deter them from continuing their illegal business."   Louis Vuitton Malletier, S.A. v. LY USA, 2008 WL 5637161, at *2 (S.D.N.Y. Oct. 3, 2008) (citations omitted), aff'd, 676 F.3d 83 (2d Cir. 2012).

The remaining factors also weigh in favor of GG.   With respect to the fifth factor, "by virtue of their default [defendants] are deemed to be willful infringers."   Lane Crawford LLC, 2013 WL 6481354, at *3 (collecting cases); accord Luban, 282 F. Supp. 2d at 124.   Regarding the sixth factor, defendants have failed to participate in this litigation, and thus have deprived GG of any records from which to assess the value of the infringing materials.

Having considered the factors, the requested statutory damage award of $75,000 per defaulting defendant is appropriate.   It also falls within the range of awards granted by courts in this district in similar circumstances.   See, e.g., William Mark Corp. v. 1&CC, 2019 WL 4195365, *10 (S.D.N.Y. May 20, 2019) (awarding $50,000 per defaulting defendant), adopted by 2019 WL 4194536 (S.D.N.Y. Sept. 3, 2019); Ideavillage Prod. Corp. v. Aarhus, 2019 WL 2290514, at *8 (S.D.N.Y. May 7, 2019) (awarding between $50,000 and $2,000,000 per defaulting defendant), adopted by 2019 WL 2287726 (S.D.N.Y. May 28, 2019); Spin Master, Inc. v. Amy & Benton Toys & Gifts Co., 2019 WL 464583, at *6 (S.D.N.Y. Feb. 6, 2019) (awarding $50,000 per defaulting defendant); Off-White LLC v. ^_^ Warm House ^_^ Store, 2018 WL 4927905, at *5 (S.D.N.Y. Oct. 11, 2018) (Off-White I) (awarding $100,000 per defendant) (collecting cases), modified and adopted by 2019 WL 418501 (S.D.N.Y. Jan. 17, 2019) (Off-White II).   Accordingly, GG should be awarded the $75,000 requested for each of

the 219 defaulting defendants, for a total of $16,425,000.

>   B.    Post-Judgment Interest

GG also seeks post-judgment interest "against any remaining balance after the Defaulting

Defendants' Frozen Assets are transferred" at the statutory rate pursuant to 28 U.S.C. § 1961(a).

See PFF ¶¶ 78-79; Supp. Mem. at 21.   Post-judgment interest "accrues automatically by

operation of law and thus it is not necessary to make reference to it in the judgment."   GATX

Corp. v. Aero Jet Corp., 2014 WL 3585887, at *6 (S.D.N.Y. July 22, 2014) (citing 28 U.S.C.

§ 1961(a)) (additional citations omitted), adopted by 2014 WL 3925233 (S.D.N.Y. Aug. 11,

2014).

>   C.    Post-Judgment Asset Restraining Order

In addition to monetary damages, GG seeks to continue the pre-judgment asset restraint

currently in place.   PFF ¶ 67; see also Supp. Mem. at 1.   "A court may issue an injunction on a

motion for default judgment provided that the moving party shows that (1) it is entitled to

injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of

an injunction."   Kingvision Pay-Per-View Ltd. v. Lalaleo, 429 F. Supp. 2d 506, 516 (E.D.N.Y.

2006) (internal quotation marks and citation omitted).   To obtain a permanent injunction, a

plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law,
> such as monetary damages, are inadequate to compensate for that injury; (3) that,
> considering the balance of hardships between the plaintiff and defendant, a
> remedy in equity is warranted; and (4) that the public interest would not be
> disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (citations omitted); accord

Salinger v. Colting, 607 F.3d 68, 77-78 (2d Cir. 2010); Rovio Entm't, 97 F. Supp. 3d at 547;

Laboratorios Rivas, SRL v. Ugly & Beauty, Inc., 2013 WL 5977440, at *11 & n.11 (S.D.N.Y. Nov. 12, 2013), adopted by 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014); Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc., 2012 WL 1414872, at *5 (E.D.N.Y. Jan. 20, 2012).

In this case, the eBay factors weigh in favor of granting GG an injunction.   "In a trademark case, irreparable injury is established where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question."   Lobo Enters., Inc. v. Tunnel, Inc., 822 F.2d 331, 333 (2d Cir. 1987) (citation and internal quotation marks); see also Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005) ("In trademark disputes, a showing of likelihood of confusion establishes . . . irreparable harm.") (citation and internal quotation marks omitted).   Accepting its allegations as true, GG has alleged a likelihood of confusion in the marketplace that could lead to diminished reputation and loss of sales.

The alleged conduct suggests that the defendants here "might continue to engage in infringing activities and counterfeiting unless enjoined by the Court, demonstrating the danger that monetary damages will fail to fully provide [the plaintiff] with relief."   Rovio Entm't, 97 F. Supp. 3d. at 547; accord Broad. Music Inc. v. Prana Hospitality, Inc., 158 F. Supp. 3d 184, 195 (S.D.N.Y. 2016) ("Courts in this Circuit have consistently found monetary damages inadequate where the defendant poses a significant threat of future infringement.") (citing cases).   Thus, the second factor weighs in GG's favor.

"As to the balance of hardships, '[i]t is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product.'"   Rovio Entm't, 97 F. Supp. 3d at 547

(alteration in original) (quoting <u>WPIX, Inc. v. ivi, Inc.</u>, 691 F.3d 275, 287 (2d Cir. 2012)).

Finally, "'the public has an interest in not being deceived — in being assured that the mark it

associates with a product is not attached to goods of unknown origin and quality.'"   <u>Id.</u> (quoting

<u>N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.</u>, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010));

<u>accord</u> <u>Broad. Music</u>, 158 F. Supp. 3d at 196 ("injunctive relief here will advance the public's

compelling interest in protecting copyright owners' marketable rights to their work so as to

encourage the production of creative work") (internal quotation marks, alterations, and citations

omitted).

A preliminary injunction with provisions designed to prevent the defendants from further

infringing activity has already been issued.   <u>See</u> PIO.   The terms of the preliminary injunction

should be continued on a permanent basis.

### D.    Release and Transfer of Frozen Assets

GG also seeks an order transferring defendants' frozen assets in accordance with Federal

Rule of Civil Procedure 64, 15 U.S.C. § 116(a), and the Court's inherent equitable power.   PFF

¶ 72; <u>see also</u> Supp. Mem. at 1.

> Courts in this district routinely order transfers of infringing defendants' frozen
> assets to plaintiffs in similar trademark infringement cases, relying on the
> authority to issue injunctive relief under Rule 64 of the Federal Rule of Civil
> Procedure, § 1116(a) of the Lanham Act, and this Court's inherent equitable
> power to issue remedies ancillary to its authority to provide final relief.

<u>William Mark Corp.</u>, 2019 WL 4195365, *12 (alterations omitted) (quoting <u>Off-White II</u>, 2019

WL 418501, at *6).   "The need for asset freeze and transfer is clear: without this relief,

defendants would have . . . a fourteen-day window under Federal Rule of Civil Procedure 62(a)

in which to hide their assets."   <u>Id.</u> (internal quotation marks and alterations omitted) (quoting

13

Tiffany (NJ) LLC v. Forbse, 2015 WL 5638060, at *4 (S.D.N.Y. Sept. 22, 2015)).   Such relief

has been granted in similar circumstances.   See, e.g., id.; Ideavillage Prod. Corp., 2019 WL

2290514, at *6; WowWee Grp. Ltd. v. Haoqin, 2019 WL 1316106, at *6 (S.D.N.Y. Mar. 22,

2019).   The same relief is warranted here.

IV.    CONCLUSION

        As to docket number 19-cv-2521, Golden Goose Deluxe Brand's motion for a default

judgment (Docket # 31) should be granted, and judgment should be entered as follows: $75,000

from each defaulting defendant, as shown in the attached chart, for a total of $10,575,000 plus

post-judgment interest pursuant to 28 U.S.C. § 1961(a); a permanent injunction under the same

terms as the preliminary injunction already in place (see Docket # 24); and a freeze on

defendants' assets and a transfer of those assets to Golden Goose Deluxe Brand.

        As to docket number 19-cv-2524, Golden Goose Deluxe Brand's motion for default

judgment (Docket # 29), should be granted and judgment should be entered as follows: $75,000

for each defaulting defendant, as shown in the attached chart, for a total of $5,850,000 plus post-

judgment interest pursuant to 28 U.S.C. § 1961(a); a permanent injunction under the same terms

as the preliminary injunction already in place (see Docket # 23); and a freeze on defendants'

assets and a transfer of those assets to Golden Goose Deluxe Brand.

        Golden Goose Deluxe Brand is directed to serve a copy of this Report and

Recommendation on all defendants using the authorized alternative service permitted by the

Permanent Injunction Order (Docket # 24 (19cv2521), Docket # 23 (19cv2524)).   It shall file

proof of service within 7 days of this issuance of this Report and Recommendation.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.   See also Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served.   Any objections and responses shall be filed with the Clerk of the Court.   Any request for an extension of time to file objections or responses must be directed to Judge Broderick.   If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.   See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Defendants may file their response by email by sending it in pdf form to Temporary_Pro_Se_Filing@nysd.uscourts.gov.   In the alternative, the response may be mailed to Pro Se Docketing, 500 Pearl Street, New York, NY 10007.

Dated: June 15, 2020
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

| Golden Goose Defaulting Defendants 19-cv-2521 | |
| --- | --- |
| **Defendant** | **Award** |
| AAdct Official Store | $75,000 |
| a fish Store | $75,000 |
| Alice's Cosy Life Store | $75,000 |
| Amoda Store | $75,000 |
| Angela's Realphoto Mall | $75,000 |
| Anitaanita Store | $75,000 |
| Babaya Footwear Store | $75,000 |
| Bai Yuze Store | $75,000 |
| bestfashion Store | $75,000 |
| BLOOMNEXT Campaign Store | $75,000 |
| BomKinta Footwear Store | $75,000 |
| Bomlight Online Store | $75,000 |
| Boutique20th Store | $75,000 |
| Boutique quality Store | $75,000 |
| Casual Gril Store | $75,000 |
| Catherine Store | $75,000 |
| CCTWINS KIDS Store | $75,000 |
| CHchildren Store | $75,000 |
| cheap price good quality children Store | $75,000 |
| child baby shop | $75,000 |
| Child baby store | $75,000 |
| China's online mall | $75,000 |
| CHIRSTYCHRISTY Store | $75,000 |
| city life | $75,000 |
| cn1513305761 Store | $75,000 |
| CNFSNJ Store | $75,000 |
| Cosmagic Exquisite Moment Store | $75,000 |
| CYFMYD Yu Hang Store | $75,000 |
| Delicate Girl Store | $75,000 |
| DENGCHEN Store | $75,000 |
| Dong Dong Store | $75,000 |
| Dreams Store | $75,000 |
| EISWELT Sprot Store | $75,000 |
| Faster delivery Store | $75,000 |
| fish fish shop 888 Store | $75,000 |
| FOR HOPE AND LOVE | $75,000 |
| Fujian Jinjiang City Chendai Yangdai Shengdong Shoes Co., Ltd. | $75,000 |
| GGOB Store | $75,000 |
| Goodboy Sneakers Store | $75,000 |
| Grand Footwear Store | $75,000 |
| GTIME Official Store | $75,000 |

| | |
|---|---|
| Hanbaidi Emishiny Store | $75,000 |
| Hangzhou Tongning Trade Co., Ltd. | $75,000 |
| Hefei Kinsney Trading Co., Ltd. | $75,000 |
| Hipster Store | $75,000 |
| HLY Store | $75,000 |
| HTUUA Official Store | $75,000 |
| ISEAQ Official Store | $75,000 |
| Jackshibo Footwear Store | $75,000 |
| Jerry Mi's store | $75,000 |
| jide01 Store | $75,000 |
| Jookrrix Boutique Store | $75,000 |
| Jookrrix Store | $75,000 |
| Kezrea Online Store | $75,000 |
| Kim's Korea Product Company Store | $75,000 |
| king8 Store | $75,000 |
| Lans Yeser Official Store | $75,000 |
| Loecktty Official Store | $75,000 |
| Magical businessman Store | $75,000 |
| MAISMODA Factory Store | $75,000 |
| mengqixiaowu Store | $75,000 |
| Mens Bags Online Store | $75,000 |
| midnight stars | $75,000 |
| minglian Store | $75,000 |
| mingxue Store | $75,000 |
| Mother Love baby shoe Store | $75,000 |
| MR&MS Store | $75,000 |
| MRMUKER No.2 Store | $75,000 |
| Nanjing July Clothing Co., Ltd. | $75,000 |
| niu niu Boutique Store | $75,000 |
| Nokodemo Official Store | $75,000 |
| Noteucm Global Store | $75,000 |
| Online shoe store | $75,000 |
| PengMiao Trading Co.,  Ltd. Store | $75,000 |
| Persistence Store | $75,000 |
| PinePoxp bag Store | $75,000 |
| prittiku Global Store | $75,000 |
| QUAN ZHOU Store | $75,000 |
| Queen6 Store | $75,000 |
| reunion Store | $75,000 |
| RLJ Store | $75,000 |
| Rocky  201701 Store | $75,000 |
| ROOM 3 | $75,000 |
| RUIM Store | $75,000 |
| SARAMAC Store | $75,000 |

| | |
|---|---|
| shengxuanny Store | $75,000 |
| Shoe's Accessory Store | $75,000 |
| shop 760415shop Store | $75,000 |
| Shop2543009 Store | $75,000 |
| Shop2821049 Store | $75,000 |
| Shop2834079 Store | $75,000 |
| Shop3115024 Store | $75,000 |
| Shop3862047 Store | $75,000 |
| Shop3868025 Store | $75,000 |
| Shop4044053 Store | $75,000 |
| Shop4384077 Store | $75,000 |
| Shop4391095 Store | $75,000 |
| Shop4400058 Store | $75,000 |
| Shop4403036 Store | $75,000 |
| Shop4407021 Store | $75,000 |
| Shop4422008 Store | $75,000 |
| Shop4429023 Store | $75,000 |
| Shop4481127 Store | $75,000 |
| Shop4542013 Store | $75,000 |
| Shop4573031 Store | $75,000 |
| Shop4607007 Store | $75,000 |
| Shop4614002 Store | $75,000 |
| Shop4651213 Store | $75,000 |
| Shop4698097 Store | $75,000 |
| Sillay Store | $75,000 |
| Smgslib kidsshoes Store | $75,000 |
| Sooneeya Store | $75,000 |
| SUOJIALUN Official Store | $75,000 |
| Supermen Store | $75,000 |
| Supermen2 Store | $75,000 |
| Tenacious shoe Store | $75,000 |
| the boot Store | $75,000 |
| TracyGold Store | $75,000 |
| Trend Store Store | $75,000 |
| TTxs Store | $75,000 |
| UPPANG Store | $75,000 |
| Warm shop Store | $75,000 |
| WENKOUBAN Comfy Store | $75,000 |
| Wetry Store | $75,000 |
| weweya Factory Store | $75,000 |
| WQGZZD Official Store | $75,000 |
| WQGZZD YC 88 Store Store | $75,000 |
| WSTXMI Official Store | $75,000 |
| Xinglan Store | $75,000 |

| | |
|---|---|
| xingyunzhixing Store | $75,000 |
| xinranaini Store | $75,000 |
| yangwangxingkong Store | $75,000 |
| Yiwu Saikoo Trading Co., Ltd. | $75,000 |
| YouPin Store | $75,000 |
| Youtehao Store | $75,000 |
| YUG China Store | $75,000 |
| zeeohh 666 Store | $75,000 |
| zeeohh | $75,000 |
| Cozyroom Store | $75,000 |
| zhangxueyou Store | $75,000 |
| zhexi2018 Store | $75,000 |
| | |
| total: | $10,575,000 |

| 19-cv-2524 | |
|---|---|
| **Defendant** | **Award** |
| Acebrandshoes | $75,000 |
| ainihao2000 | $75,000 |
| asiafactorysince1984 | $75,000 |
| ballballu | $75,000 |
| Beibao22147 | $75,000 |
| bestgoods2019 | $75,000 |
| Brand_footwear | $75,000 |
| chen525 | $75,000 |
| chicbagg | $75,000 |
| chinatopvender | $75,000 |
| dh1998 | $75,000 |
| diyshoes350 | $75,000 |
| dripgod | $75,000 |
| elecc | $75,000 |
| fashion_tut | $75,000 |
| Feichang6jia1 | $75,000 |
| fjl1688 | $75,000 |
| gbxqqq | $75,000 |
| ggdboutlet | $75,000 |
| Ggdbshop | $75,000 |
| ggdbsneakers | $75,000 |
| ggdbstore | $75,000 |
| goldengooses | $75,000 |
| Goosegolden | $75,000 |
| Gwyg975 | $75,000 |
| haikee | $75,000 |
| hanlin688 | $75,000 |
| hanwushoes | $75,000 |
| hi510318 | $75,000 |
| homemie | $75,000 |
| Iptv001 | $75,000 |
| jiuwuzhizun8 | $75,000 |
| justdoit00 | $75,000 |
| kofeve | $75,000 |
| kofeve1 | $75,000 |
| kofeve2 | $75,000 |
| kofeve3 | $75,000 |
| kpu2018 | $75,000 |
| legou666 | $75,000 |
| lghqqq | $75,000 |
| Lingjie520 | $75,000 |

| | |
|---|---|
| liy51889999 | $75,000 |
| luishen04 | $75,000 |
| luishen06 | $75,000 |
| luishen07 | $75,000 |
| luishen23 | $75,000 |
| luishen27 | $75,000 |
| maobai896 | $75,000 |
| meikai 18 | $75,000 |
| mengmeng2016 | $75,000 |
| mikeey | $75,000 |
| one001 | $75,000 |
| pineappleg | $75,000 |
| popsneaker | $75,000 |
| Qiubaoding | $75,000 |
| raisins | $75,000 |
| reputation2000 | $75,000 |
| rose6689 | $75,000 |
| runshoesss | $75,000 |
| shoes1122 | $75,000 |
| shoes112500 | $75,000 |
| Sneakerfever | $75,000 |
| Star3store | $75,000 |
| sunnyshop008 | $75,000 |
| suprshoes | $75,000 |
| taiwen201418 | $75,000 |
| Topboost | $75,000 |
| topyeezy350 | $75,000 |
| top boost350 | $75,000 |
| Vanesse | $75,000 |
| vipsneaker | $75,000 |
| World brand1 | $75,000 |
| Xinashoes | $75,000 |
| ycqz6 | $75,000 |
| yeezyoutlet | $75,000 |
| Yeyangwen | $75,000 |
| yuntu9999store | $75,000 |
| zap666 | $75,000 |
| | |
| total: | $5,850,000 |